# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD L. COHN and KAREN S. COHN, husband and wife, as joint tenants,<br><br>Plaintiffs,<br>vs.<br>OPPENHEIMERFUNDS, INC., OPPENHEIMERFUNDS DISTRIBUTOR, INC., OPPENHEIMER CHAMPION INCOME FUND, CHARLES KANDILIS, WILLIAM L. ARMSTRONG, JOHN V. MURPHY, AND BRIAN W. WIXTED,<br><br>Defendants. | CASE NO. 09cv1656-WQH-BLM<br><br>ORDER |

HAYES, Judge:

The matter before the Court is the Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a), filed by all Defendants. (Doc. # 7).

**I.    Background**

    **A.    Oppenheimer Litigation in Other Courts**

On February 13, 2009, a complaint alleging violations of the Securities Exchange Act in connection with alleged public misstatements made regarding the Oppenheimer Champion Income Fund ("Champion Fund"), was filed in the Southern District of New York. (Larrabee Decl., Ex. A, Doc. # 7-4). Between February 24, 2009 and April 10, 2009, five additional complaints were filed containing similar allegations against many of the same Defendants in

both Colorado and New York. (Doc. # 7-1 at 2). Four of the six actions were voluntarily dismissed. (*Id*. at 2-3). The two remaining actions pending in the District of Colorado (*Janssen v. OppenheimerFunds, Inc.*, No. 09-cv-0386-JLK, and *Peters v. Oppenheimer Funds, Inc.*, No. 09-cv-0525-JLK) were consolidated by United States District Judge John L. Kane, Jr. into *In re Oppenheimer Champion Fund Securities Fraud Class Actions*, No. 09-cv-0386-JLK (the "Colorado Champion Actions"). (*Id*. at 3).

Judge Kane is also presiding over an additional thirty-one actions alleging securities law violations against eight Oppenheimer mutual funds, other than the Champion Fund, that were originally filed in or transferred to the District of Colorado. Among these are actions related to Oppenheimer municipal bond mutual funds, which were centralized by the Judicial Panel on Multidistrict Litigation (the "MDL Panel") for pre-trial coordination and consolidation on June 17, 2009. (Larrabee Decl., Ex. C, Doc. # 7-6). The MDL Panel found that "transfer to a single district ... allows pretrial proceedings with respect to any non-common issues to proceed concurrently with pretrial proceedings on common issues ... [and] ensures that pretrial proceedings will be conducted in a streamlined manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties." (*Id*. at 2). The MDL Panel denied Defendants' request for transfer to New York, denied certain plaintiffs' requests for transfer to the Northern District of California or the Western District of Pennsylvania, and transferred all Oppenheimer municipal bond fund actions to the District of Colorado, for assignment to Judge Kane. (*Id*. at 1-2). The MDL Panel found that the "parties, witnesses and documents will likely be found in or near Denver, Colorado." (*Id*. at 2).

On June 24, 2009, Judge Kane issued an order in the Colorado Champion Actions, denying Defendants' motion to transfer the Colorado Champion Actions to New York because the "overlapping defendants and concomitant efficiencies that will result from keeping them here far outweigh the grounds asserted by Defendants for transferring them to the Southern District of New York." (Larrabee Decl., Ex. D at 1, Doc. # 7-7). Judge Kane further stated: "Unless brought within the MDL as tagalong actions, [the Colorado Champion Actions] will remain separate and distinct from it for filing and docketing purposes. It is anticipated,

1 however, that the cases will be part of all hearings and pretrial proceedings scheduled in the
2 MDL cases." (*Id.* at 2).

3 On July 20, 2009, Judge Kane issued a Case Management Order which consolidated
4 the thirty-two pending Oppenheimer actions currently pending before him, including the
5 Colorado Champion Actions, into nine consolidated actions. (Larrabee Decl., Ex. F at 2-3,
6 Doc. # 7-9). The Case Management Order provides that "[t]he terms of this and previous
7 orders governing case management in this Oppenheimer securities litigation, including pretrial
8 consolidation, shall apply automatically to actions later instituted in, or removed or transferred
9 to, this Court that involve claims against the nine Oppenheimer Funds currently at issue." (*Id.*
10 at 7).

### B. Oppenheimer Litigation in This Court

12 On July 31, 2009, Plaintiff Donald L. Cohn initiated this action by filing the Complaint.
13 (Doc. # 1). On September 9, 2009, Plaintiff Donald L. Cohn filed the First Amended
14 Complaint, adding Plaintiff Karen S. Cohn, "as joint tenants." (Doc. # 6).

15 The First Amended Complaint alleges as follows. "The Registration Statements,
16 Prospectuses, and Statements of Additional Information ... used through the relevant period
17 of time [2006, 2007, and 2008] ... to register and offer the Champion Fund to [Plaintiff Donald
18 L.] Cohn contained untrue statements of material facts and omitted material facts necessary
19 to make the statements therein not misleading." (Doc. # 6 ¶ 19). The First Amended
20 Complaint includes numerous quotes of allegedly false or misleading statements made in
21 written materials distributed to the public by Defendants to market the Champion Fund. (Doc.
22 # 6 at 4-15). "In October 2008, Plaintiff Donald L. Cohn was considering making an
23 investment of $2,000,000 in the Champion Fund." (Doc. # 6 ¶ 34). Cohn's stockbroker, a
24 non-party, "made a review of the OppenheimerFunds Portfolio Quarterly Updates available
25 at the time pertaining to the Champion Fund, and other general sources, and thereafter he and
26 Cohn elected to make further inquiry before making a final decision on Cohn's potential
27 investment." (Doc. # 6 ¶ 35). On October 13, 2008, Cohn and his stockbroker participated in
28 a conference call with Defendant Charles Kandilis, a Vice-President for Oppenheimer. (Doc.

# 6 ¶ 38). "The telephone conference between Kandilis, Cohn, and [Cohn's stockbroker] did not take a great deal of time, but in his statements to Cohn and [Cohn's stockbroker], Kandilis was adamant that the Champion Fund was 'a safe investment.'" (Doc. # 6 ¶ 42). "Kandilis also most emphatically stated that the Champion Fund share price was now at a point 'that an Armageddon would have to occur to lose monies in the funds, if Cohn invested at the current price.'" (Doc. # 6 ¶ 41). "After reviewing the public information regarding the status and nature of the Champion Fund, and the assurances provided by Kandilis, and in reliance upon Kandilis' representations regarding the safety and overall health of the Champion Fund," Cohn invested $1,000,000 in the Champion Fund on October 14, 2008 and an additional $1,000,000 in the Champion Fund on October 15, 2008. (Doc. # 6 ¶ 43). "[T]he value of the Champion Fund began immediately to spiral downward. By the end of October 2008, Cohn's $2,000,000 investment had been reduced to $1,763,600, and by the end of calendar year 2008, his investment had been reduced further to $770,000.... [C]urrently the value of [Cohn's] investment in the Champion Fund equals $732,205." (Doc. # 6 ¶ 47). Plaintiffs allege violations of federal and California securities law, including violations of Section 11 of the Securities Act of 1933, 15 U.S.C. § 77(k), and Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b). Plaintiffs seek compensatory and punitive damages.

On September 29, 2009, Defendants filed the Motion to Transfer Venue, requesting that the Court transfer this action to the District of Colorado. (Doc. # 7). Defendants contend that the Colorado Champion Actions and this action (the "Cohn Champion Action") allege similar facts and claim that the same federal securities laws were violated:

> In both the Cohn Champion Action and the Colorado Champion Actions, all claims arise from the same issue, namely whether the Fund misrepresented the investments it planned to make and the risks of those investments. *Compare* Cohn Compl. ¶ 19 (alleging that quoted excerpts from the Funds' August 7, 2006 Registration Statement are misleading) with *Janssen* Compl. ¶ 43 (same) (Larrabee Decl. Ex. J), and *Peters* Compl. ¶ 41 (same) (Larrabee Decl. Ex. I). The disclosures at issue in all three cases involve sophisticated investments in high-yield debt instruments, commercial mortgage-backed securities and complex derivatives, including single name and index-linked credit default swaps. *Id.* In addition, plaintiffs in all three cases allege that their losses can be attributed to the Champion Income Fund's alleged statements and omissions. *Compare* Cohn Compl. ¶¶ 49-52 (attributing plaintiffs' losses to Defendants' failure to disclose investments in 'high-risk, more speculative investment products'), with *Peters* Compl. ¶¶ 72-76 (attributing plaintiffs' losses to

> allegedly 'false and misleading statements' that 'misrepresent[ed] the Funds' investing outlook'), and *Janssen* Compl. ¶ 57 (attributing plaintiffs' losses to 'Defendants' positive, but misleading or untrue statements, and ... omissions'). Moreover, the Colorado Champion Actions are putative class actions that would include the Cohns as members of their alleged respective putative classes.

(Doc. # 7-1 at 5-6). Defendants contend:

> [A]djudication of the Cohn Champion Action in the same forum as the Colorado Champion Actions and the Related Actions will best serve the interests of justice and the convenience of the parties and witnesses because transfer will: 1) preserve party and judicial resources by avoiding wasteful duplication, especially during motion practice and discovery (e.g., redundant depositions, discovery requests and document productions), thereby facilitating economical and expeditious pre-trial proceedings; 2) eliminate the risk of inconsistent rulings on identical issues of law and similar motions; and 3) avoid the prospect of satellite litigation outside the center of gravity for the Oppenheimer Mutual Fund Litigation in the District of Colorado.

(Doc. # 7-1 at 2).

On October 19, 2009, Plaintiffs filed an opposition to the Motion to Transfer. (Doc. # 9). Plaintiffs contend that there are key differences between the Cohn Champion Action and the Colorado Champion Actions—most notably, the alleged conference call with Defendant Kandilis (who is not a Defendant in the Colorado Champion Actions) and the addition of the California securities law claims. Plaintiffs contend: "The involvement of Defendant Kandilis in the Cohns' investment decision differentiates and distinguishes this case from all pending OppenheimerFunds cases now pending in the District Court of Colorado...." (Doc. # 9 at 3). Plaintiffs, who reside in La Jolla, California, contend that it would be inconvenient for them to litigate in Colorado. Plaintiffs also contend that the Defendants do not have meaningful contacts with Colorado, relying upon the arguments made by Defendants in their motions to transfer the Colorado Oppenheimer actions to New York, which were denied by the MDL Panel and Judge Kane. (Doc. # 9 at 9-13; *see also* Larrabee Decl., Exs. B (Defendants' motion to transfer before MDL Panel); C (MDL Panel Order transferring actions to Colorado, rather than New York); K (Defendants' motion to transfer one of the Champion Actions before Judge Kane); D (Judge Kane Order denying the motion to transfer the Colorado Champion Actions)).

On October 26, 2009, Defendants filed a reply brief, wherein Defendants contend: "[C]laims brought under Plaintiffs' primary claim, Section 11 of the Securities Act of 1933, can only be brought based on written disclosures in the registration statements. 15 U.S.C. §

77(k). Accordingly, the 'difference' [between the Colorado Champion Actions and the Cohn Champion Action] Plaintiffs highlight, that Mr. Kandilis allegedly orally assured them that investing in the Champion Fund was 'a safe investment,' is legally irrelevant." (Doc. # 10 at 3).

## II. Discussion

### A. Standard of Review

Title 28 of the United States Code, section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of § 1404(a) is to "prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal citations and quotation omitted). The statute requires a court to consider the convenience of the parties and witnesses and the interests of justice. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 499 (9th Cir. 2000); *see also A.J. Indus., Inc. v. U.S. Dist. Court for Cent. Dist. of Cal.*, 503 F.2d 384, 386-87 (9th Cir. 1974). To undertake this analysis of "convenience" and the "interests of injustice," a district court weighs "multiple factors," including the plaintiff's choice of forum, the contacts relating to the plaintiff's cause of action in the chosen forum, the convenience of witnesses, the ease of access to sources of proof, the state that is most familiar with the governing law, the differences in the costs of litigation in the two forums, and the relevant public policy. *Jones*, 211 F.3d at 498-99. The party moving for a transfer pursuant to § 1404(a) bears the burden to show that another forum is more convenient and serves the interest of justice. *See id*. at 499; *Commodity Futures Trading Comm'n. v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979).

### B. This Case Might Have Been Brought in Colorado

The parties do not dispute that this case could have been brought in the District of Colorado. Plaintiffs bring claims under federal securities laws which provide that venue is proper in any district "wherein the defendant is found or is an inhabitant or transacts business." 15 U.S.C. § 77aa; *see also Wash. Pub. Utils. Group v. U.S. Dist. Court for W. Dist. Of Wash.*,

843 F.2d 319, 328 (9th Cir. 1987). Defendants are found in, are inhabitants of, and transact business in Colorado. (Zack Decl. ¶¶ 6-8, 15-16, Doc. # 7-2). Therefore, this action "might have been brought" in the District of Colorado. 28 U.S.C. § 1404(a).

### C. Convenience of the Parties and Witnesses

"Although the convenience of the plaintiff is not important to the balancing process, the [plaintiff]'s choice of forum must be given some weight." *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 278 (9th Cir. 1979). "In judging the weight to be accorded [plaintiff]'s choice of forum, consideration must be given to the extent of both [plaintiff]'s and the [defendants]' contacts with the forum, including those relating to [plaintiff]'s cause of action. If the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter, [plaintiff]'s choice is entitled to only minimal consideration." *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) (citation omitted).

"Because this is a securities fraud action, plaintiffs' claims are based on defendants' alleged misrepresentations and omissions, which are deemed to occur in the district where they are transmitted or withheld, not where they are received." *In re Yahoo! Inc.*, No CV 07-3125, 2008 WL 707405, at *8 (C.D. Cal., Mar. 10, 2008) (citations omitted). The operative conduct alleged in the First Amended Complaint revolves around documents and statements that were transmitted from outside of California. (Zack Decl. ¶¶ 9-17, Doc. # 7-2). None of the corporate Defendants have facilities or employees in California, and the only conduct alleged to have occurred in California involves Plaintiff Donald Cohn and his stockbroker. The Court accords Plaintiff's choice of forum some weight, although the amount of weight is reduced because of the few relevant contacts with California.

Litigation in this Court would be more convenient for Plaintiffs and their stockbroker, each of whom are California residents. The remaining parties and potential witnesses are located outside of California. Defendant OppenheimerFunds, Inc. is a Colorado corporation with its headquarters in New York City. (*Id.* ¶ 3). Defendant OppenheimerFunds Distributor, Inc. is a New York corporation with its headquarters in New York City. (*Id.* ¶ 4). Defendant Champion Fund is a Massachusetts business trust, and its Board of Trustees meet regularly in

1  Colorado. (*Id.* ¶¶ 5-6). Defendants Charles Kandilis and William L. Armstrong reside in
2  Massachusetts, and Defendants John V. Murphy and Brian W. Wixted reside in Colorado. (*Id.*
3  ¶¶ 13-16). Management operations for the Champion Fund occur in New York City, while
4  "certain ... back office operations [are maintained] in Colorado, including its accounting and
5  some of its compliance operations." (*Id.* ¶ 7). KPMG, LLP is the Champion Fund's
6  independent registered public accounting firm, which audits the Champion Fund through its
7  Denver, Colorado offices. (*Id.* ¶ 12). All of the documents related to the Champion Fund are
8  located in Colorado or New York. (*Id.* ¶ 18). For each of the Defendants and their
9  representatives (with the possible exception of Defendant Kandilis, who is not a Defendant in
10 the Colorado Champion Actions), litigation in Colorado would be more convenient than
11 litigation in this Court, either because they are based in Colorado, or they will be required to
12 appear in Colorado for the earlier-filed Colorado Champion Actions. *See Alexander v.*
13 *Franklin Res., Inc.*, No. C 06-7121, 2007 WL 518859, at *3 (N.D. Cal., Feb. 14, 2007) ("With
14 respect to the convenience of the parties, appearing in a single district is more convenient than
15 appearing in two different districts on opposite coasts of the country."). Similarly, transfer to
16 Colorado would be more convenient for the third-party witnesses who already would be
17 required to testify in the Colorado Champion Actions. *See Papaleo v. Cingular Wireless*
18 *Corp.*, No. C-07-1234, 2007 WL 1238713, at *2 (N.D. Cal., Apr. 26, 2007) ("[W]ith respect
19 to the convenience of third-party witnesses, which often is the most significant factor, the
20 Court finds transfer would be substantially more convenient for each such witness, because
21 such witnesses would not be required to engage in duplicative litigation or travel to two
22 different forums to attend court proceedings."); *Jolly v. Purdue Pharma L.P.*, No. 05-cv-1452,
23 2005 WL 2439197, at *2 (S.D. Cal., Sept. 28, 2005) ("[G]iven the probable overlap between
24 the witnesses called in Plaintiff's case and the witnesses called in the sixty-six other cases
25 currently pending against Purdue in the Southern District of New York, the convenience of the
26 witnesses and of the parties would be better served if all cases were within one district, as
27 opposed to scattered throughout the United States.").
28           The Court finds that the factors related to the convenience of the parties and witnesses

are evenly balanced.

### D.     Interest of Justice

"The question of which forum will better serve the interest of justice is of predominant importance on the question of transfer, and the factors involving convenience of parties and witnesses are in fact subordinate." *Madani v. Shell Oil Co.*, No. 07-4296, 2008 WL 268986, at *2 (N.D. Cal., Jan. 30, 2008) (quotation omitted); *see also Mussetter Distrib., Inc. v. DBI Beverage Inc.*, No. Civ. 09-1442, 2009 WL 1992356, at *6 (E.D. Cal., July 8, 2009) (same); *Amazon.com v. Cendant Corp.*, 404 F. Supp. 2d 1256, 1261 (W.D. Wash. 2005) (same).

"The pendency of related actions in the transferee forum is a significant factor in considering the interest of justice factor." *Jolly*, 2005 WL 2439197, at *2; *see also Madani*, 2008 WL 268986, at *2 ("An important consideration in determining whether the interests of justice dictate a transfer of venue is the pendency of a related case in the transferee forum."); *Bratton v. Schering-Plough Corp.*, No. CV 07-653, 2007 WL 2023482, at *5 (D. Ariz., July 12, 2007) ("In general, cases should be transferred to districts where related actions are pending."). "The feasibility of consolidation is a significant factor in a transfer decision, although even the pendency of an action in another district is important because of the positive effects it might have in possible consolidation of discovery and convenience to witnesses and parties." *A.J. Indus., Inc. v. U.S. Dist. Court for Cent. Dist. of Cal.*, 503 F.2d 384, 386-87 (9th Cir. 1974) (citations omitted). "In addition to the possible consolidation of discovery and the conservation of time, energy and money, centralizing the adjudication of similar cases will also avoid the possibility of inconsistent judgments." *Mussetter Distrib.*, 2009 WL 1992356, at *5; *see also Jolly*, 2005 WL 2439197, at *2 ("Litigation of related claims in the same tribunal is strongly favored because it facilitates efficient, economical and expeditious pre-trial proceedings and discovery and avoids duplic[ative] litigation and inconsistent results."); *Argonaut Ins. Co. v. MacArthur Co.*, No. 12-3878, 2002 WL 145400, at *4 (N.D. Cal., Jan. 18, 2002) ("The best way to ensure consistency is to prevent related issues from being litigated in two separate venues.").

The pendency of the Colorado Champion Actions and the related Oppenheimer

litigation in Colorado weighs heavily in favor of transfer. Although the allegations related to Defendant Kandilis are unique to the Cohn Champion Action, there is "substantial overlap" between the claims brought by the Cohns and the claims in the Colorado Champion Actions. *Mussetter Distrib.*, 2009 WL 1992356, at *5 ("Here, there is substantial overlap between the claims in the Northern District actions and those in the instant case.... [T]he pendency of related cases in the Northern District and the feasibility of consolidation weigh heavily in favor of transfer."). The Court finds that the transfer of this action to the District of Colorado would serve the interest of justice, due to the possible consolidation of discovery and the conservation of time, energy and money, and the avoidance of the possibility of inconsistent judgments.

The other relevant "interest of justice" factors do not weigh strongly in either direction. Although this Court presumes it is generally more familiar with California state law than a Colorado district court, the relevant California securities law mirrors federal securities law. *See Flaxel v. Johnson*, 541 F. Supp. 2d 1127, 1144 (S.D. Cal. 2008) ("The Court finds that California's securities fraud provisions are analogous to § 10(b) [of the federal Securities Exchange Act] and Rule 10b-5. Therefore, the Court grants plaintiffs' motion for summary judgment ... for state-law securities fraud to the same extent ... as the Court granted summary judgment on plaintiffs' cause of action for federal securities fraud."). While California has a strong interest in protecting its citizens from securities fraud, *see S. Cal. First Nat'l Bank v. Quincy Cass Assoc.*, 3 Cal. 3d 667, 676 (1970), Colorado has a strong interest in the activities of its corporations. *See Jarvis v. Marietta Corp.*, No. C-98-4951, 1999 WL 638231, at *7 (N.D. Cal., Aug. 12, 1999) ("While California does have an interest in protecting its citizens, New York clearly has an interest in its corporations and the activities they undertake. Especially given that most of the documentary evidence, witnesses and actions at issue in this case are, or occurred in, New York, New York has a greater local interest in the controversy at issue than does California.") (citation omitted).

The purpose of § 1404(a) is to "prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen*, 376 U.S. at 616. The Court concludes that this purpose would be best served by

transferring this action to the District of Colorado.

### III. Conclusion

IT IS HEREBY ORDERED that the Motion to Transfer Venue is **GRANTED**. (Doc. # 7). The Clerk of the Court shall **TRANSFER** this action to the United States District Court for the District of Colorado pursuant to 28 U.S.C. § 1404(a).

DATED: November 12, 2009

*William Q. Hayes*
**WILLIAM Q. HAYES**
United States District Judge